IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DAVIES US INC.,

*Plaintiff,*

v.

STEVEN C. WESTON and
KATHLEEN A. WESTON,

*Defendants.*

No. 1:24-CV-00164-SB

---

Alessandra Glorioso, Brittany L. Garza, Gregory S. Tamkin, Stephen R. Weingold, DORSEY & WHITNEY, Wilmington, Delaware.

*Counsel for Plaintiff.*

Daniel A. Griffith, WHITEFORD TAYLOR PRESTON LLC, Wilmington, Delaware; Daniel A. O'Brien, Matthew T. Murnane, VENABLE LLP, Wilmington, Delaware.

*Counsel for Defendant Kathleen A. Weston.*

---

### MEMORANDUM OPINION

May 26, 2026

BIBAS, *Circuit Judge*, sitting by designation.

Some debtors keep it in the family: They move their money to a spouse (or ex-spouse) while saddling creditors with their debts. Steven Weston sold his business to a company called Davies, but the deal raised red flags. Davies sued Steven for fraud and they settled: Steven would get his company back, and he would pay Davies about $4 million as part of the deal. Steven's wife, Kathleen, signed a spousal

acknowledgment. A few weeks later, she filed for divorce. Steven then sold his company for a profit, triggering repayment of his $4 million debt to Davies. But three days after the sale was announced, Steven and Kathleen executed a divorce settlement agreement, splitting their assets. Steven allegedly took on enough debt that almost nothing was left over for Davies.

Davies sued both Westons individually, claiming breach of contract, fraudulent conveyance, and unjust enrichment against both. The company moved for partial summary judgment against Steven, but he never responded. D.I. 73. It now alleges the $2.6 million Kathleen got in the divorce should have instead gone to it to pay off marital debt. Because each claim turns on factual questions reserved for the jury, all claims must go to trial.

### I. STEVEN SELLS THE FAMILY COMPANY, AND KATHLEEN DIVORCES HIM

In 2021, Steven sold his stake in SK Weston & Company to the Davies company. D.I. 91-1 at 2. But Davies concluded that Steven had lied about the company's finances, so it sued him for fraud. *Id.* The parties soon settled. As part of the settlement, they unwound the sale, which meant Steven got back his stake in SK Weston. D.I. 91-1 at 3. In exchange, Steven returned some of the money that Davies had paid him. *Id.* He also signed a promissory note, which put him on the hook to pay about $4 million to Davies over the course of ten years. D.I. 91-1 at 18. But if he ever sold his reacquired stake, the whole note would come due. D.I. 91-1 at 10, 42. To close out the settlement, Steven's wife Kathleen signed a document acknowledging and "consent[ing]" to the promissory note. D.I. 91-1 at 15. Right after, Kathleen filed for

2

divorce. Opening Br. 1; Answering Br. 3. A year and a half after that, in 2023, Steven sold his reacquired stake in SK Weston. D.I. 91-1 at 42, 52. That made his $4 million debt to Davies due immediately. *Id.* But instead of paying off the company with the cash from the sale, Steven paid Kathleen: Three days after the deal was announced, the Westons finalized their divorce with a settlement. D.I. 91-1 at 130. The SK Weston sale should have made a solid dent in the debt. Steven made about $5 million on the deal. D.I. 91-1 at 116. Still, once all the liabilities were factored in, they may have come up nearly $1 million short of what Davies was owed. D.I. 91-1 at 116, 123, 153, 166, 173–74, 250–52; D.I. 90 at 10. But neither Steven nor Kathleen paid the company anything. As part of their divorce agreement, the Westons allocated the remaining $3 million in sales proceeds ($5 million in gross proceeds, minus transaction costs and escrowed funds) between them. D.I. 91-1 at 120, 213. Kathleen got $2.6 million and half the marital assets. D.I. 91-1 at 138, 139, 231. Steven got about $700,000 and the rest of the assets. *Id.* He also took on all the marital debt (around $4.6 million, including the debt to Davies). D.I. 91-1 at 140.

Davies sued both to collect on the note, bringing claims for breach of contract, fraudulent conveyance, and (as a fallback) unjust enrichment. Compl., D.I. 1, 25. Davies moved for summary judgment against Steven, and he has yet to respond. Kathleen moved to dismiss, but I denied her motion. D.I. 35. Now she moves for summary judgment on all counts, and Davies moves for summary judgment as to fraudulent conveyance. I may grant the motions only if the moving party has shown that there

is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## II. THE BREACH CLAIM MUST GO TO TRIAL

Davies first claims that it can recover on the promissory note from Kathleen. D.I. 90 at 20. As I have already held, Kathleen's marriage to Steven does not, by itself, make her a guarantor of his debts under the applicable Maryland law. *See* D.I. 35 at 4; *Schweizer v. Schweizer*, 484 A.2d 267, 272 (Md. 1984); D.I. 91-1 at 146. So to see whether she is bound, I must look to the note. *Id.* The note's choice-of-law clause selects Delaware law, which governs my interpretation. D.I. 35 at 4; D.I. 25-1 at 4; *Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 464 (Del. 2017).

Whether Kathleen can be liable for breach of the settlement agreement turns on whether she was a party to it. Only parties can be sued for breach. *See Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 172 (Del. 2002). Kathleen says she is not because she did not sign the settlement agreement or the note. D.I. 66 at 10–12. But in Delaware, a non-signatory may still be bound if she manifests an intent to be. *See Am. Legacy Found. v. Lorillard Tobacco Co.*, 831 A.2d 335, 343–44, 348–49 (Del. Ch. 2003). And while Kathleen did not sign the settlement or note, she did sign a spousal acknowledgment. It says: "As Steven's spouse, I have discussed the Settlement Agreement and the Note with Steven and hereby consent to the transactions contemplated by the Settlement Agreement and the Note and to Steven entering into the Settlement Agreement and the Note." D.I. 91-1 at 39 (emphasis added). The

4

parties disagree about what this language means. Davies insists that it binds Kathleen to the note, protecting its right to payment if Steven cannot pay. D.I. 90 at 20–21. Kathleen maintains that she merely acknowledged her husband's obligations. D.I. 66 at 10–12.

The text does not clearly pick a side. It speaks of Kathleen's "consent to the transactions," suggesting something more than passive awareness. D.I. 91-1 at 39. And her consent to the note was a condition of the settlement agreement, tying her to it. D.I. 91-1 at 6, 28, 123. Still, the agreement never expressly makes Kathleen a guarantor. That omission may matter for enforcement against her. *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (all material terms, determined on a case-by-case basis, must be included for a contract to be enforceable).

When contract language is ambiguous, courts must consider evidence outside the contract. *See Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232–33 (Del. 1997*)*. But resolving ambiguity is proper at summary judgment only if there is no genuine dispute of material fact. Fed. R. Civ. P. 56(a). Here, the parties' different readings create such a dispute. Kathleen says she viewed "acknowledgment" and "consent" as distinct when she signed, but she never explains the line between the two. D.I. 91-1 at 245–46. And her after-the-fact testimony alone does not conclusively establish meaning. *See Calyon N.Y. Branch v. Am. Home Mortg. Corp.*, 383 B.R. 585, 591 (Bankr. D. Del. 2008) (doubting the relevance and weight of a party's trial testimony about his "belief" and "understanding" of "provisions of the contract"). Davies, for its part, offers evidence pointing the other way: The Westons' marital agreement

accounts for the debt, and Kathleen sought indemnification from Steven for marital liabilities. D.I. 91-1 at 137, 140. Both facts suggest that she worried she might be on the hook. "This is a quintessential example of ambiguous contract language that should go to a factfinder." D.I. 35 at 6. Since there are still issues of material fact, I deny Kathleen's motion for summary judgment on the breach-of-contract claim.

### III. THE FRAUDULENT-CONVEYANCE CLAIM MUST GO TO TRIAL TOO

Both Kathleen and Davies moved for summary judgment on the company's fraudulent-conveyance claim. D.I. 65; D.I. 68; D.I. 90. On the motion to dismiss, I held that Maryland law should govern this claim. D.I. 35 at 7. The parties do not revisit that choice, so I apply it here. In Maryland, fraudulent conveyance includes insolvent conveyance. An insolvent conveyance is: (1) a conveyance that (2) is "incurred by a person who … will be rendered insolvent by it," (3) without fair consideration, with (4) a debtor-creditor relationship involved. Md. Code Ann., Com. Law § 15-204; *see also Greystone Operations, LLC v. Steinberg*, 2017 WL 1365365, at \*3 (Md. Ct. Spec. App. Apr. 12, 2017).

*First* is conveyance. As I explained earlier, a divorce transfer qualifies. D.I. 35 at 8. Maryland defines "conveyance" broadly to include any transfer of property, including the payment of money. Com. Law § 15-201(c); *see Cruickshank-Wallace v. Cnty. Banking & Tr. Co.*, 885 A.2d 403, 423 (Md. Ct. Spec. App. 2005).

*Second* is insolvency. Davies offers accounting information suggesting that Steven lacked funds to pay his debts and that, when they divorced, the Westons' marital debt exceeded their marital assets. D.I. 91-1 at 153, 163–64. Kathleen disagrees,

6

underscoring that Steven received cash and other assets from the divorce that Davies does not account for. D.I. 66 at 16–17; D.I. 91-1 at 135, 138, 249, 252. Those dueling accounts create a genuine dispute over whether the transfer rendered Steven insolvent.

*Third* is fair consideration. Because this is a conveyance between spouses, Kathleen bears the burden of proving that she gave fair consideration. *Kennard v. Elkton Banking & Tr. Co. of Md.*, 6 A.2d 258, 259 (Md. 1939). To do so, she must show that, in exchange for the $2.6 million that she got, she gave a fair equivalent in good faith. Com. Law § 15-203(a). Davies offers accounting evidence to argue that she did not, suggesting that Kathleen got all the liquid sale proceeds while Steven took on debts he could not pay. D.I. 90 at 8–10; D.I. 91-1 at 123, 173–74. Kathleen responds that Steven also got $2.6 million in the divorce, along with escrowed funds he could and did later recover. D.I. 66 at 16–17; D.I. 91-1 at 231. Still, his debts may have outweighed those funds.

Kathleen also emphasizes that she contributed to the marriage and gave up the family home, a potential inheritance, and life-insurance benefits. D.I. 66 at 15. But the record raises doubts about whether those amount to fair consideration. The home's equity appears to have been far less than $2.6 million. D.I. 91-1 at 153. The life insurance was speculative, which may not qualify as marital property. *Cf. Prahinski v. Prahinski*, 540 A.2d 833, 841, 844 (Md. Ct. Spec. App. 1988) (speculative future earnings do not count). And inheritance does not count at all, making the exchanged asset worth zero dollars. Md. Code Ann., Fam. Law § 8-201(e)(3).

7

Kathleen argues that she did not act in bad faith because she was unaware of any scheme to evade creditors. D.I. 66 at 17. But that does not matter if she did not pay her fair share. Maryland law allows recovery regardless of intent if the conveyance lacked fair consideration and rendered the debtor insolvent. Md. Code Ann., Com. Law § 15-204 ("Every conveyance made … by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent" if made without fair consideration).

*Fourth* is the existence of a debtor-creditor relationship. This last element is un-disputed: Davies is Steven's creditor, as shown by the debt contract. D.I. 25-1.

Insolvency and fair consideration remain up for grabs. The competing evidence calls for a jury, so the fraudulent-conveyance claim must proceed to trial.

## IV. KATHLEEN'S MONEY MAY BE UNJUST ENRICHMENT

If both the breach and fraudulent-conveyance claims fail, Davies claims Kathleen will be unjustly enriched because she will have marital debt forgiveness and $2.6 million. D.I. 90 at 22. Maryland law also governs Davies's unjust-enrichment claim. D.I. 35 at 9. To prove unjust enrichment under Maryland law, a plaintiff must show that: (1) the defendant got a benefit from the plaintiff, (2) the defendant knew about the benefit, and (3) accepting or continuing to enjoy the benefit without payment would be inequitable. *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007).

Kathleen contests the first factor: whether she got a benefit from Davies. If she got a benefit, she argues, it was from her ex-husband or Mr. Briggs, who bought Steve's company from the Westons. D.I. 66 at 14. But that makes no difference. Under

8

Maryland law, "[i]t is immaterial how the money may have come into the defendant's hands, and the fact that it was received from a third person will not affect [her] liability, if, in equity and good conscience, [s]he is not entitled to hold it against the true owner." *Plitt v. Greenberg*, 219 A.2d 237, 241 (Md. 1966) (quoting *Empire Oil Co. v. Lynch*, 126 S.E.2d 478, 479 (Ga. Ct. App. 1963)); *see also Hill*, 936 A.2d at 353 ("[W]e have not required always that a benefit conferred in an unjust enrichment action come necessarily and directly to the defendant."). The benefit is clearly traceable to Davies, who sold the company back to the Westons and enabled its sale. That is enough.

The second and third factors easily survive summary judgment. Kathleen acknowledges that the company was sold while Davies was owed about $4 million. D.I. 66 at 7–8. Although she says she did not know the promissory note was unpaid when they got divorced, she knows now. D.I. 91-1 at 247. That is enough. *See Hill*, 936 A.2d at 354–55. And if she knowingly got the money as part of a fraudulent scheme, then "continuing to hold onto it would be plainly inequitable." D.I. 35 at 10. Since Davies and Kathleen present competing evidence as to whether such a scheme existed, there is a genuine issue of material fact that survives summary judgment.

\* \* \* \* \*

It is possible that Kathleen had no idea that her $2.6 million divorce settlement was windfall. It is also possible she did and schemed with Steven to secure it. A jury must decide between the two. Because there remain several disputed issues of material fact, Davies's suit survives summary judgment on all three of its claims.

9

_____
UNITED STATES CIRCUIT JUDGE

10